Filed 7/7/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>LUCIO SEDENO ROSAS,<br><br>   Defendant and Appellant. | 2d Crim. No. B295921<br>(Super. Ct. No. 2017023660)<br>(Ventura County)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING [NO CHANGE<br>IN JUDGMENT] |

THE COURT:

The opinion filed in this matter on June 8, 2020, is modified as follows:

1. On page 13, the first full paragraph beginning "Aside from being forfeited," is deleted.

2. On page 13, in the second paragraph, the first sentence beginning "In any event" is deleted and replaced with the following:

Even assuming that this theory is properly raised for the first time on appeal, the record does not support a finding that

Officer Coronel had reasonable suspicion to search under the blanket for weapons.

3. On the last page, counsel for appellant is modified to state:

Richard B. Lennon, Emma Gunderson, under appointment by the Court of Appeal, for Defendant and Appellant.

These modifications do not change the judgment.

Respondent's petition for rehearing is denied.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUCIO SEDENO ROSAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B295921<br>(Super. Ct. No. 2017023660)<br>(Ventura County) |

Lucio Sedeno Rosas appeals the judgment entered after he pleaded guilty to possessing methamphetamine with a prior conviction that required him to be registered as a sex offender. (Health & Saf. Code, § 11377, subd. (a); Pen. Code,[1] § 290, subd. (c).)  In exchange for his plea, a misdemeanor charge of possessing drug paraphernalia, i.e., a methamphetamine pipe (Health & Saf. Code § 11364, subd. (a)) was dismissed. Imposition of sentence was suspended and appellant was placed on three years formal probation under Proposition 36 (§ 1210.1) with various terms and conditions.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Appellant contends the trial court erred in denying his motion to suppress the evidence obtained from the warrantless searches of his person and vehicle (§ 1538.5) because the People did not meet their burden to justify either search under the Fourth Amendment. We agree. Both searches were premised upon erroneous information that appellant was on probation. Even assuming that the officers who conducted the searches reasonably concluded from this information that appellant was on probation, they had no reason to believe he was subject to search terms as a condition of that probation. It is well-settled that the probation exception to the warrant requirement cannot be satisfied under these circumstances. (See, e.g., *People v. Thomas* (2018) 29 Cal.App.5th 1107, 1114.) Moreover, the People offered no evidence to meet their burden of proving that the evidence was nevertheless admissible under the good faith exception to the exclusionary rule. Accordingly, we reverse.

**FACTS AND PROCEDURAL HISTORY**

The relevant facts are derived from the transcript of the hearing on appellant's suppression motion and other evidence admitted at the hearing. At around 2:00 a.m. on July 3, 2017, Oxnard Police Officers Ignacio Coronel and Christopher Salvio were dispatched to a residential address in the 700 block of Forest Park Boulevard in response to a report of a suspicious person in a passenger truck in front of the residence. When the officers arrived at the location, they saw appellant sitting in the driver's seat of a parked truck with the driver's side door open.

As reflected in video footage captured on Officer Salvio's body cam,[2] the officer approached appellant and asked him where

---

[2] The video footage was admitted as a defense exhibit along with a transcript of the conversations it depicts.

he lived.  Appellant replied that he lived just two houses away and had come outside to smoke a cigarette and listen to music. Appellant gave his name and address, said he did not have a driver's license, and added that he had a state identification card but did not have it on him.  During this exchange, Officer Coronel walked over to the front passenger window of the truck, shone a flashlight through the slightly-open window and into the front passenger compartment, and moved the flashlight around to illuminate the compartment.

In response to further questioning, appellant provided Officer Salvio with his date of birth and said the truck belonged to his father Alberto Sedeno, with whom he lived.  He also retrieved the truck's registration card from the glove box and gave it to Officer Salvio.  The registration card reflected that the truck was registered to Alberto Sedeno who lived at the address appellant had given.  The officer asked appellant "Do you have any probation or parole or anything like that?"  Appellant replied, "No."

Officer Salvio retained the registration card and called police dispatch to run a records check to confirm appellant's identity and determine if he had any warrants or was on probation or parole.  Officer Salvio continued to talk to appellant while waiting for this information.  Approximately two minutes into the encounter, Officer Coronel turned off his flashlight but remained in his position by the front passenger window.  As Officer Salvio continued to talk to appellant, Officer Coronel turned his flashlight on again, pointed the end of the light through the slightly-open front passenger window, and began moving the light around again to illuminate the interior.

3

Approximately four minutes into the encounter, the dispatcher verified appellant's identity and address and stated that appellant was "on probation out of Kern County for [a] 647.6 [and] also a 290 registrant." Officer Coronel, who heard everything the dispatcher was saying, turned off his flashlight and remained in his position by the front passenger window. Officer Salvio questioned appellant about his record and asked "What'd you do to get yourself registered as a 290?" Appellant replied that "[t]his one time [he] was walking the streets and [he] accidentally . . . grabbed [a] girl and tried to kiss her." During this exchange, Officer Salvio proceeded to ask appellant for his middle name, height, weight, and eye color, and had him repeat his date of birth. After appellant conveyed this information, Officer Salvio asked Officer Coronel, "Anything on that end, Ignacio?" Officer Coronel replied, "No."

After a brief period of silence, Officer Salvio told appellant "you're on probation, you told me no." Appellant reiterated that he was not on probation and Officer Salvio replied, "You are on probation. They just told me you're on probation." Appellant repeated that he was not on probation and did not have to report to anyone and the officer interjected, "You don't report, then you're on summary probably." After appellant once again verified his address, Officer Salvio said, "So, you don't report to a P.O., but . . . you are on probation." Appellant replied, "Oh, okay. I – I didn't know about that." Appellant added that when he had been on probation before he "would go and talk to [his] probation officer but . . . they stopped . . . a long time ago." At that point, the body cam video footage ended.

At the outset of the suppression hearing, the parties stipulated that appellant was *not* on probation and that the

4

information conveyed by the dispatcher to the contrary was erroneous. Officer Salvio testified that he decided to conduct a probation search of appellant based upon the information he had received from dispatch. In appellant's pocket, the officer found a bag containing a substance that appeared to be methamphetamine. Officer Salvio then conveyed that information to Officer Coronel, who subsequently questioned appellant about the "crystalline substance" that had been found on his person.

Under cross examination by defense counsel, Officer Salvio acknowledged that the dispatcher did not tell him that appellant was subject to search terms as a condition of his probation. Following recross-examination by defense counsel, the court questioned Officer Salvio as follows: The court: "[Dispatch] made no mention, one way or the other, whether [appellant] had search terms, I take it; is that correct? [¶] [Officer Salvio]: That is correct, your Honor. [¶] The Court: Did that cause you to assume that he had search terms? [¶] [Officer Salvio]: "Yes, your Honor. [¶] The court: Okay. Why did that cause you to assume that? [¶] [Officer Salvio]: At that time, your Honor, I was fairly – I was a fairly new officer and I believed probation to commonly be associated with supervised release, which usually includes search terms. [¶] The court: Okay. All right. So that was common in your experience, I take it, then? [¶] [Officer Salvio]: Yes, your Honor." The court then asked the prosecutor if she had "[a]nything further on that" and the prosecutor replied, "No, your Honor."

Officer Coronel testified on direct examination that as he was looking through the front passenger window of the truck, he saw "a lot of things on top of a small blanket that was covering

5

the bottom portion of the seat and under that carpet [*sic*] there was a bulge."  Officer Coronel added "[t]hat bulk—I didn't know—I could tell that there was something under there; however, I was not sure.  I suspected it might be . . . a weapon or something, contraband."  The officer went on to testify that "[w]hen [appellant] directed his attention to Officer Salvio, I took the opportunity to reach through the cracked window and uncover the blanket."  Under the blanket, the officer discovered a glass pipe with residue that appeared to be methamphetamine.

In response to further questioning by the prosecutor, Officer Coronel testified that he believed he did not discover the pipe until after the officers had received the information that appellant was on probation.  After reviewing his report of the incident, the officer acknowledged that he first questioned appellant about the pipe while appellant "was seated next to the vehicle, somewhere along the sidewalk." At that time, he also asked appellant about "the crystalized [*sic*] substance that was found on his person" and appellant confirmed it was approximately one gram of methamphetamine.  Appellant was subsequently cited for violations of Health and Safety Code sections 11377, subdivision (a) and 11364, subd. (a), and was released with a notice to appear.

On cross-examination, Officer Coronel was asked to view Officer Salvio's body cam footage.  After watching the video, the officer acknowledged conveying to Officer Salvio that he had not seen anything inside the truck that gave him reasonable suspicion or probable cause to search it.

Following the presentation of evidence at the suppression hearing, appellant argued he was unlawfully detained at the inception of the encounter and that he and his father's truck were

6

unlawfully searched. Defense counsel argued among other things that Officer Salvio "just assumed if probation, then search terms. But that's not enough. . . . If an officer is out there imposing search term[s] on every defendant on probation, even in cases where the Court found it was not reasonable or not necessary, that's very deleterious to public health, the public psyche, to think it doesn't matter what the Court says[] what your terms are, the police are going to do whatever they're going to do . . . ." So, you know, I don't think anything was done purposefully to . . . violate any kind of constitutional rights, but, nonetheless, constitutional rights were violated."

The court denied the motion. After finding that the initial encounter was consensual and that the circumstances that followed gave the officers sufficient reason to conduct an investigatory detention, the court stated "it's a little more problematical for the People when we get to the issue of whether [probation] equates to search terms. And, you know, the officer[s] made the logical conclusion that [probation] me[ant] search terms because 99.9 percent of the time that's true."

The court went on to add: "I don't think that the integrity of the search has to rely on that because . . . [Officer] Coronel[] indicated that while all this was going on, he observed a bulge below or underneath a blanket [on] the seat. And obviously that, I think, an objective and reasonable interpretation of that was that some effort to conceal whatever it was made as the officers approached, and that would indicate reasonably that it was some type of contraband or even a weapon. And so I think at that point he had probable cause to reach in and find out what in the heck that was. There was a search, no question about it, but I don't think that it need rely solely on the probation information.

7

I think that the observation of the officer was sufficient under the circumstances as well."

## DISCUSSION

Appellant contends that his motion to suppress the evidence obtained through the warrantless searches of his person and his father's truck should have been granted because the People failed to meet their burden to show either an exception to the warrant requirement or that the good faith exception to the exclusionary rule applied. We agree.[3]

"Pursuant to article I, section 28, of the California Constitution, a trial court may exclude evidence under . . . section 1538.5 only if exclusion is mandated by the federal Constitution." (*People v. Banks* (1993) 6 Cal.4th 926, 934.) "The Fourth Amendment to the federal Constitution prohibits unreasonable searches and seizures." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 365, italics omitted.) When a defendant moves to suppress evidence under section 1538.5, the People have "the burden of proving that the warrantless search or seizure was reasonable" (*People v. Williams* (1999) 20 Cal.4th 119, 130 (*Williams*)), and alternatively, "'the burden . . . to prove that exclusion of the evidence is not necessary because of [the good faith] exception.'" (*People v. Willis, supra*, 28 Cal.4th at p. 36.)

"'"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the

---

[3] In light of our conclusion, we need not address appellant's contention that both searches were the fruits of an unlawful detention. We also need not address his claim that the erroneous information conveyed by dispatch was not attributable to the police, such that the good faith exception did not apply. (See, e.g., *People v. Willis* (2002) 28 Cal.4th 22, 36.)

facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." [Citation.] On appeal we consider the correctness of the trial court's ruling itself, not the correctness of the trial court's reasons for reaching its decision."' (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at pp. 364–365, italics omitted.) When "the facts are basically undisputed, we independently review the decision, applying federal law, as well as state law where it does not conflict with federal law, to evaluate the issues involved." (*People v. Downing* (1995) 33 Cal.App.4th 1641, 1650, fn. omitted.)

The trial court upheld the warrantless searches of appellant's person and his father's truck based on the information that the officers received from dispatch indicating that appellant was on probation. Although the dispatcher did not convey any information indicating that appellant was subject to search terms as a condition of his probation, the court found that "the officer[s] made the logical conclusion that [probation] me[ant] search terms because 99.9 percent of the time that's true." The law dictates otherwise.

"A search conducted without a warrant is unreasonable per se under the Fourth Amendment unless it falls within one of the 'specifically established and well-delineated exceptions.'" (*People v. Woods* (1999) 21 Cal.4th 668, 674.) One such exception exists for probation searches. (*People v. Robles* (2000) 23 Cal.4th 789, 795.) By accepting a search and seizure condition, a probationer gives advance consent to a search, and a police officer may

9

conduct a reasonable search even without a particularized suspicion of criminal activity.  (*People v. Bravo* (1987) 43 Cal.3d 600, 610 (*Bravo*).

It is well-settled, however, that "the [probation] exception is inapplicable if police are unaware of the probation *search condition* at the time of a warrantless search."  (*People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1184, italics added.)[4] "Because the terms of probation define the allowable scope of the search [citation], a searching officer must have '*advance knowledge of the search condition*' before conducting a search [citations].  Without such advance knowledge, the search cannot be justified as a proper probation search, for the officer does not act pursuant to the search condition."  (*Romeo*, at pp. 939–940, italics added; see also, e.g., *Hoeninghaus*, at p. 1194 ["[W]hen police are unaware of the [search] condition, they cannot know that a probationer has given advance consent and therefore cannot claim to be conducting a probation or consent search"].)

It is thus clear that the warrantless searches of appellant's person and truck cannot be upheld as probation searches. Moreover, the People failed to meet their burden of proving that the good faith exception to the exclusionary rule applied; indeed, the People offered no evidence whatsoever on this issue. Although Officer Salvio testified that he thought all probationers were subject to search terms because he was a "fairly new officer"

_____

[4] Accord, e.g., *In re Jaime P.* (2006) 40 Cal.4th 128, 136; *People v. Sanders* (2003) 31 Cal.4th 318, 335; *People v. Thomas*, *supra*, 29 Cal.App.5th at p. 1114; *People v. Romeo* (2015) 240 Cal.App.4th 931, 939-940; *People v. Douglas* (2015) 240 Cal.App.4th 855, 863; *People v. Durant* (2012) 205 Cal.App.4th 57, 64; *People v. Medina* (2007) 158 Cal.App.4th 1571, 1577; *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1254.)

at the time, that testimony was elicited by the *trial court* after the prosecutor had completed her questioning.  (See *People v. Rigney* (1961) 55 Cal.2d 236, 241 [Although "[a] trial judge may examine witnesses to elicit or clarify testimony[,]" the judge "must not become an advocate for either party"].)

In any event, neither Officer Salvio's testimony regarding his subjective belief on this issue—nor the trial court's factually unsupported assertion that "99.9 percent" of probationers are subject to search terms—is sufficient to establish the good faith exception to the exclusionary rule.  "'[The] good-faith inquiry is confined to the objectively ascertainable question whether *a reasonably well-trained officer* would have known that the search was illegal' in light of 'all of the circumstances.'  [Citation.]" (*Herring v. United States* (2009) 555 U.S. 135, 145 [172 L.Ed.2d 496], italics added, citing *United States v. Leon* (1984) 468 U.S., 897, 922, fn. 23 [82 L.Ed.2d 677].)  "These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience . . . but not his subjective intent." (*Id.* at pp. 145-146, internal citations omitted.)

Officer Salvio's subjective justification for the search—i.e., that he believed all probationers were subject to search terms because he was a "fairly new officer"—presents the very antithesis of the controlling standard, which requires us to determine whether "a reasonably well-trained officer" would have known otherwise.  Police officers are presumed to know the law, particularly those laws that relate to the performance of their duties.  (*People v. Tersinski* (1982) 30 Cal.3d 822, 832; see also *Heien v. North Carolina* (2014) 574 U.S. 54, 67 [190 L.Ed.2d 475]

11

(lead opn. of Roberts, J. [recognizing that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty[-]bound to enforce"].)  Because a reasonably well-trained officer would know that a probation search cannot be conducted absent knowledge that the party to be searched is subject to search terms, the good faith exception to the exclusionary rule does not apply here.

The court alternatively found that "the integrity of the search" did not depend upon the information that appellant was on probation because Officer Coronel testified that he saw "a bulge below or underneath a blanket [on] the seat," and "an objective and reasonable interpretation of that was that some effort to conceal whatever it was was made as the officers approached, and that would indicate reasonably that it was some type of contraband or even a weapon.  And so I think at that point he had probable cause to reach in and find out what in the heck that was."

The People, however, did not argue any such theory below.  In purporting to meet their burden of establishing the lawfulness of the searches, the People's written response to the suppression motion and the prosecutor's arguments at the hearing on the motion focused exclusively on the information that appellant was on probation.  In their respondent's brief, the People nevertheless contend for the first time on appeal that "[g]iven appellant's strange behavior, lack of identification, apparent lie about his probation status, and the existence of a suspicious bulge under the blanket, reasonable suspicion supported searching [under] the blanket" for weapons.  The People go on to argue, also for the first time on appeal, that "[p]robable cause supported the search

12

of appellant's pocket once he was discovered with a methamphetamine pipe."

Aside from being forfeited, these claims are based on the factually unsupported premise that the search of the truck preceded the search of appellant's person. Although the prosecution called Officer Coronel to testify first at the suppression hearing, nothing in the record demonstrates that he searched the truck before Officer Salvio searched appellant. On direct examination, Officer Coronel testified that "[w]hen [appellant] directed his attention to Officer Salvio, I took the opportunity to reach through the cracked window and uncover the blanket." The officer went on to make clear, however, that he first confronted appellant about the methamphetamine pipe *after* Officer Salvio had found the methamphetamine on his person.

In any event, the record does not support a finding that Officer Coronel had reasonable suspicion to search under the blanket for weapons. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on '*specific and articulable facts* which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (*Michigan v. Long* (1983) 463 U.S. 1032, 1049 [77 L.Ed. 2d 1201], italics added.)

Officer Coronel did not articulate any facts that would support a protective search of the truck for weapons. Moreover, we have watched the bodycam footage. "If a picture is worth a thousand words, a moving picture is worth a million." (*People v. Webb* (1999) 74 Cal.App.4th 688, 690.) As the trial judge noted,

13

the footage "speak[s] for itself." Suffice to state that nothing displayed in the footage could be reasonably construed to support the finding urged by the People for the first time on appeal.

The cases the People cite in support of their claim are plainly inapposite. For example, in *People v. King* (1989) 216 Cal.App.3d 1237 (*King*), one of two officers conducting a traffic stop "saw the driver . . . reach under the driver's seat and heard the contact of metal on metal." (*Id.* at p. 1239.) At the suppression hearing, the officer testified that he "feared for the safety of his partner and himself because there was increased gang activity in the area and the driver reached under the seat." (*Ibid.*) The officer then "*ordered the occupants out of the [vehicle]* and checked for weapons under the seat," finding a loaded firearm. (*Ibid.*, italics added.)

These facts and testimony bear no relation to those presented in this case. The cases cited by the People in which the court upheld *patdown* searches (see, e.g., *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1061; *People v. Superior Court (Brown)* (1980) 111 Cal.App.3d 948, 955) are equally unavailing.

In respondent's brief, the People emphasize that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." (*Michigan v. Long*, *supra*, 463 U.S. at p. 1047.) The People would nevertheless have us conclude that Officer Coronel—purportedly out of concern for the safety of himself and Officer Salvio, *and while appellant was still sitting in the driver's seat*—put his arm through the top of the slightly-opened front passenger window, reached his arm all the way down to a blanket on top of the seat (which the officer testified had "a lot of things on top of" it), lifted the blanket, saw the glass pipe, and retrieved it. Even assuming

14

that the officer could have performed such a maneuver—which, from the bodycam footage, would appear to be physically impossible—it defies logic to even suggest he would have done so while appellant, who could quickly gain access to anything under the blanket, was still in the vehicle.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions that the trial court permit appellant to withdraw his guilty plea and enter an order granting his motion to suppress.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

I concur:

GILBERT, P. J.

15

YEGAN, J., DISSENTING:

The majority opinion could serve as a textbook example of the exclusionary rule gone awry. Our Supreme Court has said that exclusion of evidence should be our last resort, not our first impulse. The objective reader, schooled in Fourth Amendment jurisprudence and traditional appellate rules will make up his or her own mind. The trial court's express ruling is as follows: "At what point did it change from a consensual encounter to a detention? I'm not quite sure I want to even try to demarcate at this point. But certainly when they receive information that he was on probation as a [Penal Code section] 290 registrant and a [Penal Code section] 647.6 conviction out of Kern County, whether he's on probation or not, given the nature of the offense, the hour, the neighborhood, the residential neighborhood, they've got even more reason to detain at that point and determine whether they've got a stalker or what in the world is going on."

The ruling is accurate as to the facts and law. It is presumed on appeal to be correct. At all times the police acted not only reasonably, not only courtesy, but outright friendly. These were not rogue cops out on a mission to roust a citizen. How do I know this? At the conclusion of the "unlawful search and seizure," they had appellant sign a promise to appear and let him go on his way.

No, the police did not order him out of his car at gunpoint. They did not handcuff or arrest him, or beat him with a baton. They were nice to him and we should not second guess the police, who at all times, reasonably believed him to be on probation with search terms. They did not blunder. They reasonably relied upon information given to them by the police dispatcher who told them that appellant was a registered sex offender on probation.

They then drew the inference that he had search terms.  He was, in fact, a registered sex offender but not on probation with search terms.  We do not judge the actions of the police with hindsight.  We judge their actions based upon what they were relying upon at the time they acted.

So, what did they know?  1. They were ordered by a police dispatcher/watch commander to investigate a reported suspicious car with a single occupant at approximately 2 a.m. in a residential neighborhood; 2. Appellant had no identification which, of course, hampers police investigation; 3. Appellant said he had not slept in three days; and 4. Appellant was reported by the police dispatcher to be a registered sex offender, on probation.  So what inference do they draw, i.e., that appellant had search terms.  What are the police supposed to do?  Should they automatically credit appellant's innocent explanation or do they utilize their training and common sense and conclude that "something is amiss."  Would it have been reasonable for the police to just walk away from a registered sex offender sitting in a car in a residential neighborhood at 2 a.m.?  As indicated by the trial court, appellant could have been out at night, stalking another victim for sexual assault.  This is an articulated and well reasoned factual finding and rationale to execute the search terms thought to be extant.  And what about the admission that appellant had not slept for three days?  This is consistent with a medical condition of insomnia.  It is also consistent with methamphetamine use.

Without expressly saying so, the fair import of the majority opinion is that the officers in the field cannot rely on a police dispatcher who is reading from a rap sheet and they cannot draw the inference of search terms from a grant of probation.  This is a

2

novel claim and is at variance with common sense and experience.  And this mistake is not subject to the good faith exception to the exclusionary rule?  This is also a novel claim.

I agree with the trial court and it's implied finding that the search can be upheld as a probation search.  There may be cases where probation does not carry search terms but I again concur in the trial court's observation that such terms are extant in 99 percent of the cases.  The officers acted in "good faith" (*United States v. Leon* (1984) 468 U.S. 897 (*Leon*)) and suppression is not here warranted.  The mistaken entry on appellant's rap sheet was entered by a court clerk.  Our Supreme Court has expressly held that a court clerk is not part of the law enforcement team and police action predicated there on, is not a ground for the exclusion and evidence.  (*Arizona v. Evans* (1995) 514 U.S. 1, 14-15; *People v. Willis* (2002) 28 Cal.4th 22, 29-35; see also *People v. Hamilton* (2002) 102 Cal.App.4th 1311.)

An appellate court should not reweigh the evidence as if it were the trier of fact and draw inferences away from the order denying suppression.  (E.g., *People v. Leyba* (1981) 29 Cal.3d 591, 596-597.)  Here the majority opinion impermissibly does both.

We have come a long way since Justice Traynor wrote the opinion establishing the exclusionary rule in California. (*People v. Cahan* (1955) 44 Cal.2d 436.)  A rereading of this case is refreshing.  It shows why the blatantly illegal conduct of the police lead to the rule.  By factual comparison, the police conduct here would barely, if at all, register on a scale.  As indicated by our United State's Supreme Court, the "touchstone" here is "reasonableness."  In my view, and given the rules on appeal, as a matter of law, the officers' actions were reasonable.  If there was a "minor transgression," it is excused by their "good faith."

3

Application of the exclusionary rule here offends justice.  (*Leon*, *supra*, 468 U.S. at p. 908.)  I would affirm the order denying suppression.

CERTIFIED FOR PUBLICATION.


YEGAN, J.

4

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

1