Filed 12/27/18 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL JASON THOMAS,<br><br>        Defendant and Appellant. | C083845<br><br>(Super. Ct. No. 16FE007658)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 3, 2018, be modified as follows:

On page 3, the first full paragraph, the seventh sentence, beginning with "After removing the knife", is deleted and the following sentence is inserted in its place:

> After removing the knife from the lining of defendant's jacket, Burnett "observed" an BET card at the bottom of defendant's pant leg, near his left boot, with defendant's name on it.

On page 4, delete the last full paragraph, beginning with "The magistrate" and insert the following paragraph in its place:

> The magistrate, Alan G. Perkins, found there was sufficient suspicion to contact defendant, as he was in physical proximity to the

1

location two and one-half hours after the call, in daylight.  Given the minor "nature of the crime," the magistrate reasoned defendant would not have felt compelled to get away from the scene quickly.  The magistrate also found there was sufficient basis to presume the conduct complained of was sufficient to be "some kind of criminal offense or some kind of conduct that might lead to danger to others or perhaps even to the person doing the harassing."  The magistrate then found "the combination of the crime being harassing conduct, the person being in the area, the homeless camp nearby, the lack of cooperation which by itself is not a crime but combined with other factors and the factor that the defendant was dressed in at least what might seemingly be overdressed for the occasion in the sense it was a very hot day with bulky sweatpants and a wind breaker, I think would barely but sufficiently give the officer suspicion that there might well be something concealed under there that could be a danger."  Accordingly, the magistrate denied the motion to suppress.

On page 8, delete the first full paragraph, beginning with "There are, however" and insert the following paragraph in its place:

There are, however, limitations on the applicability of the probation exception.  As relevant here, "the exception is inapplicable if police are unaware of the probation search condition at the time of a warrantless search."  (*People v. Hoeninghaus*, *supra*, 120 Cal.App.4th at pp. 1184, 1194-1195; also *In re Jaime P.*, *supra*, 40 Cal.4th 128; *People v. Sanders* (2003) 31 Cal.4th 318, 332-333; *People v. Robles* (2000) 23 Cal.4th 789, 797; *People v. Durant* (2012) 205 Cal.App.4th 57, 64; *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1252.)

On pages 8 and 9, delete last paragraph beginning on page 8 and continuing on page 9. The paragraph begins with "Moreover, even if" and ends with "the warrantless search."

There is no change in the judgment. Defendant's petition for rehearing is denied.

BY THE COURT:


 /s/
Blease, Acting P. J.


 /s/
Robie, J.


 /s/
Renner, J.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL JASON THOMAS,<br><br>    Defendant and Appellant. | C083845<br><br>(Super. Ct. No. 16FE007658) |

Defendant Daniel Jason Thomas appeals his convictions for possession of a dirk or dagger, possession of methamphetamine with prior convictions, and possession of drug paraphernalia.  On appeal, he contends it was error to deny his motion to suppress under Penal Code[1] section 1538.5 as the detention and patsearch were not justified by reasonable suspicion.  We agree and reverse the judgment.[2]

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Because of our resolution on this issue, we do not address defendant's additional claim that his sentence for possessing a methamphetamine pipe should have been stayed when he was sentenced for possessing methamphetamine.

FACTUAL AND PROCEDURAL BACKGROUND

Based on the evidence discovered during the search of defendant, he was charged with carrying a concealed dirk or dagger, felony possession of methamphetamine based on a prior strike conviction, and misdemeanor possession of a smoking device.[3] The information also alleged a prior strike conviction.

After the preliminary examination, defendant filed a motion to suppress under section 1538.5. Following an evidentiary hearing, the magistrate denied the motion.

*Suppression Hearing*

In April 2016 at 12:23 p.m., the Sacramento Police Department received a call that a "male black adult subject wearing a dark hoody, . . . and black pants" was harassing customers in front of a business in the Del Paso Heights area. The description of the subject was clarified as a gray hooded sweatshirt and black pants. Additional information included that the subject had "set up camp," "there was some kind of homeless camp set up nearby," and defendant "appeared to have something mental going on," in that he did not seem to understand when people were speaking to him. There was no information in the call regarding threats, trespassing, battery, physical assault, or weapons being involved.

The Del Paso Heights area has a high crime rate. There are a high number of transients and homeless people in the area. There is also a "fair amount" of foot traffic in the area due to the retail shops and restaurants.

Officer Mark Kimble and his beat partner responded to the area at 2:54 p.m., approximately two hours and 20 minutes after the initial call. Defendant was wearing "bulky clothing, bulky hooded sweatshirt and bulky pants, as well as a windbreaker jacket on top of that." Kimble indicated it was a "pretty warm . . . afternoon." He was

---

[3] Given the claim on appeal, a detailed recitation of the facts underlying the substantive offenses is unnecessary.

2

seated on the sidewalk approximately 70 to 80 yards away from the complaining business. There was no one else in the immediate vicinity.

The officers contacted defendant "and he repeatedly would not give his name on multiple different requests." The officers explained why they were in the area and speaking to defendant, but he "repeatedly would not give his name." Based on "what he was wearing, the totality of the circumstances," Kimble asked defendant if he had any weapons on him. Defendant said he was not on probation, did not have to speak to the officers, and began walking away. Burnett put defendant in a control hold, Kimble handcuffed him and performed a patsearch for weapons. In the course of that search, Kimble felt an item that felt like a fixed blade knife and what felt like a narcotics pipe. After removing the knife from the lining of defendant's jacket, Burnett "observed" an EBT card in defendant's pocket with defendant's name on it. Kimble performed a records check and it showed defendant was on informal searchable probation. The officers continued to search defendant and found methamphetamine in the same pocket the pipe had been in.

The parties stipulated the scope of the suppression hearing was limited, as defendant was only contesting the initial detention and *Terry*[4] patsearch.

Defendant argued that generalized harassment is not a crime; thus, officers responding to a general call of harassment, are not responding to a report of a crime. In addition, there was more than a two-hour time lapse between the call and the officer's contact with defendant, the description given was vague and general, the area was heavily trafficked, and there were a great number of transients in the area. Thus, the officers did not have a reasonable suspicion that a crime had been committed. Moreover, counsel argued, defendant was not aggressive or threatening and did not appear under the

---

[4]     *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889].

3

influence of a controlled substance. He noted California does not have an identification law requiring compliance with a law enforcement officer's request to identify oneself. Defense counsel argued, therefore, there was no basis to justify a *Terry* search. Defense counsel acknowledged it was reasonable for the officers to make a consensual contact with defendant, but when they restrained and detained him, "they went a step too far."

The People argued that the 911 call, coupled with defendant's attire, behavior, lying, refusing to identify himself, and starting to walk away gave the officers reasonable suspicion. The People also argued discovery of the knife and drug paraphernalia was inevitable, because if defendant had "been forthcoming with his identity from the beginning, the officers would have learned of [his] probation condition sooner and would have inevitably searched [him] and discovered the evidence."

The magistrate found there was sufficient suspicion to contact defendant, as he was in physical proximity to the location two and one-half hours after the call, in daylight. Given the minor "nature of the crime," the trial court reasoned defendant would not have felt compelled to get away from the scene quickly. The trial court also found there was sufficient basis to presume the conduct complained of was sufficient to be "some kind of criminal offense or some kind of conduct that might lead to danger to others or perhaps even to the person doing the harassing." The trial court then found "the combination of the crime being harassing conduct, the person being in the area, the homeless camp nearby, the lack of cooperation which by itself is not a crime but combined with other factors and the factor that the defendant was dressed in at least what might seemingly be overdressed for the occasion in the sense it was a very hot day with bulky sweatpants and a wind breaker, I think would barely but sufficiently give the officer suspicion that there might well be something concealed under there that could be a danger." Accordingly, the trial court denied the motion to suppress.

4

*Trial*

After the denial of the motion to suppress, the matter proceeded to jury trial. A jury found defendant guilty of all three charges. In bifurcated proceedings, the trial court found the prior conviction allegation true. The trial court sentenced defendant to a term of two years on possessing a dirk or dagger, doubled pursuant to the strike, a concurrent two-year term on felony possession of methamphetamine, doubled pursuant to the strike, and time served on the misdemeanor possession of drug paraphernalia, for an aggregate term of four years in prison.

## DISCUSSION

Defendant contends it was error to deny his motion to suppress. He contends the investigative detention and patsearch were not justified by reasonable suspicion, as the report was stale, overly general in its physical description of him, and vague in its assertion of any criminal activity. The People argue defendant is estopped from arguing the search was unlawful because he lied to the officers when he told them he was not on probation when he was, and in any event, there was reasonable suspicion to support the stop and patsearch search.

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio*, *supra*, 392 U.S. at p. 20 [20 L.Ed.2d. at p. 905].) "A seizure of the person occurs ' "whenever a police officer 'by means of physical force or show of authority' restrains the liberty of a person to walk away." ' " (*People v. Douglas* (2015) 240 Cal.App.4th 855, 860, quoting *People v. Ceils* (2004) 33 Cal.4th 667, 673; see *People v. Brown* (2015) 61 Cal.4th 968, 976-977.) Warrantless searches and seizures are presumed to be unreasonable, " 'subject only to a few specifically established and well-delineated exceptions.' " (*People v. Diaz* (2011) 51 Cal.4th 84, 90.) "There are two different bases for detaining an individual short of having probable cause to arrest: (1) reasonable suspicion to believe the individual is involved in criminal activity [citation]; and (2) advance knowledge that the individual is

5

on searchable probation or parole." (*Douglas*, at p. 860; see *People v. Schmitz* (2012) 55 Cal.4th 909, 916.) "[A] search founded on neither reasonable suspicion of criminal activity nor advance knowledge of a probation search condition can aptly be characterized as arbitrary." (*In re Jaime P.* (2006) 40 Cal.4th 128, 138; see *People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1188.) In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's express or implied factual findings if supported by substantial evidence. (*People v. Redd* (2010) 48 Cal.4th 691, 719; *People v. Woods* (1999) 21 Cal.4th 668, 673-674.) "However, if the undisputed facts establish that the search or seizure was constitutionally unreasonable as a matter of law," we are not bound by the trial court's ruling. (*People v. Middleton* (2005) 131 Cal.App.4th 732, 738 quoting *People v. Medina* (1972) 26 Cal.App.3d 809, 815.) We independently determine whether the facts found amount to a reasonable search or seizure under the Fourth Amendment. (*Redd*, at p. 719; *Woods*, at pp. 673-674.)

The People claim defendant cannot challenge the validity of the "search and seizure as a probation search" because he was on informal searchable probation and lied when he told officers he was not on probation. In making this claim, they rely on our decision in *People v. Watkins* (2009) 170 Cal.App.4th 1403. In *Watkins,* we held that a defendant who intentionally misrepresented his identity to prevent law officers from discovering his probation or parole status and search conditions was equitably estopped from challenging the search as a probation search. (*Id.* at pp. 1408-1409.)

The People are raising this claim for the first time on appeal.[5] "[F]or a suppression ruling to be reviewable, the underlying objection, contention or theory must

_____

[5] The People did cite *Watkins* in their opposition to defendant's motion, in the context of arguing the search of defendant was inevitable because he was on searchable probation. The People argued that while defendant denied he was on probation, once the officers learned his name from his EBT card and that he was subject to search, the discovery of the knife and drug paraphernalia was inevitable. They went on to argue had

6

have been urged and determined in the trial court." (*People v. Manning* (1973) 33 Cal.App.3d 586, 600.) "[T]he scope of issues upon review must be limited to those raised during argument, whether that argument has been oral or in writing. This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions." (*Manning*, at p. 601.) It was the People's burden to raise the issue of equitable estoppel at the suppression hearing. (*People v. Williams* (1999) 20 Cal.4th 119, 136 [At the suppression hearing, once defendant has made the prima facie showing that the police acted without a warrant, the prosecution "has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification"]; *LaRue v. Swoap* (1975) 51 Cal.App.3d 543, 551 ["The burden of pleading facts which raises the issue of estoppel lies with the party who would estop the other party [citation], and for estoppel to be available it must be specially pleaded"].) "Failure to plead estoppel constitutes a waiver and we need not consider the issue for the first time on appeal." (*Ibid.*) Because the People did not raise and argue the issue of equitable estoppel, defendant was not permitted to litigate the issue, and the trial court was not required to rule on it. Accordingly, the claim of equitable estoppel is forfeited on appeal.

When a defendant challenges the legality of a warrantless search or seizure, the People must establish that the search fell within one of the recognized exceptions to the warrant requirement. (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939; *People v.*

---

he been forthcoming with his identity from the beginning, they would have learned of his probation condition earlier and inevitably searched him and discovered the evidence. At no point did the People argue or put forward evidence supporting a claim of equitable estoppel. That is, they did not offer evidence that defendant intentionally misrepresented his probation status and did so with the purpose of preventing officers from discovering the search condition.

*Hoeninghaus*, *supra*, 120 Cal.App.4th at p. 1184.) "A probation search is one of those exceptions. (*People v. Schmitz*[, *supra*,] 55 Cal.4th . . . [at p.] 916 . . . ; *People v. Woods*[, *supra*,] 21 Cal.4th . . . [at pp.] 674-675 . . . [probation exception based on advance consent].)" (*Romeo*, at pp. 939; see *Hoeninghaus*, at p. 1184.)

There are, however, limitations on the applicability of the probation exception. First, "the exception is inapplicable if police are unaware of the probation search condition at the time of a warrantless search." (*People v. Hoeninghaus*, *supra*, 120 Cal.App.4th at pp. 1184, 1194-1195; also *In re Jaime P.*, *supra*, 40 Cal.4th 128; *People v. Sanders* (2003) 31 Cal.4th 318, 332-333; *People v. Robles* (2000) 23 Cal.4th 789, 797; *People v. Durant* (2012) 205 Cal.App.4th 57, 64; *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1252.) Second, because the exception is based on consent, the search is limited to the terms articulated in the search condition. (*People v. Bravo* (1987) 43 Cal.3d 600, 605; *People v. Romeo*, *supra*, 240 Cal.App.4th at p. 950.) "[A] probation condition is the written manifestation of the probationer's consent, and it both defines the scope of consent and sets the parameters of a proper consent search." (*Hoeninghaus*, at p. 1195.) Thus, to determine if a probation search is reasonable, we must evaluate the terms of the operative search clause objectively. (*Romeo*, at p. 950.)

In this case, the record is clear, the officers were unaware defendant was on searchable informal probation until after they placed him in a control hold, handcuffed him, and conducted a patsearch for weapons. Because the officers were unaware of the probation search condition at the time they detained and searched defendant, they cannot rely on the existence of this probation condition to now justify the search and seizure.

Moreover, even if the People could rely on the existence of a probation condition based on their claim of equitable estoppel, it would remain their burden to justify the probation search was reasonable. (*People v. Schmitz*, *supra*, 55 Cal.4th at p. 919.) Where a probation search is challenged, an officer's knowledge that the defendant was on probation and subject to search alone may be insufficient to determine the search was

8

reasonable because "probation search clauses are not worded uniformly" and "judges may limit the scope of the defendant's consent to searches for particular contraband, such as drugs or stolen property, or place spatial limits on where searches may take place." (*People v. Romeo*, *supra*, 240 Cal.App.4th at p. 951.) Here, "there is nothing in the record to aid an objective evaluation of the scope of advance consent that was given." (*Id*. at p. 950.) In the absence of any evidence as to the terms of the probation condition or the scope of defendant's consent, there is no way for the trial court, or this court, to consider the reasonableness of the probation search. In the absence of such evidence, the People did not meet their burden to justify the warrantless search.

"[T]o justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893; *People v. Souza* (1994) 9 Cal.4th 224, 231; *Terry v. Ohio*, *supra*, 392 U.S. at p. 30 [20 L.Ed.2d at p. 911].) "The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C.*, at p. 839.) It remains the prosecution's burden to prove "that the warrantless search or seizure was reasonable under the circumstances." (*People v. Williams*, *supra*, 20 Cal.4th at p. 130.)

Here, the facts are undisputed. In the middle of the day, a person contacted law enforcement officers to report an adult black male wearing a sweatshirt and dark pants was "harassing" customers. The subject appeared to have some mental health problems and had "set up camp." The area was a high-crime area, with a high number of transients and homeless people. The area also has a "fair amount" of foot traffic due to numerous retail shops and restaurants. Two and one-half hours after they received the call, law enforcement officers arrived to the area. They saw defendant sitting on the sidewalk,

9

approximately 80 yards away from the business.  He was wearing a Windbreaker, sweatshirt, and dark pants.  There was no one else in the area.

A vague description does not provide reasonable suspicion to stop every person falling within that vague description.  (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 381-382.)  A more detailed description, including such characteristics as age, hair or eye color, attire, height and build combined with additional suspicious circumstances, might reasonably justify a detention.  (*People v. Fields* (1984) 159 Cal.App.3d 555, 564 [detention lawful where the defendant matched victim's description of suspect's race, gender, height, general age, and attire]; *People v. Harris* (1975) 15 Cal.3d 384, 387 ["male Caucasian, dark hair, moustache, about 5 feet 8 inches tall, about 150 pounds, wearing a light cardigan sweater and dark trousers"]; *People v. Flores* (1974) 12 Cal.3d 85, 89 ["Mexican-Americans, wearing dark clothing and wide-brimmed hats, each being 5 feet 8 inches to 5 feet 9 inches tall, and weighing 160 to 165 pounds" and driving a dark-colored General Motors "fastback" sedan of mid-1940's vintage].)  Here, the caller provided an extremely vague and very general physical description of the person "harassing" customers.  The description did not include any reference to the person's height, weight, or age.  Even the clothing was nondescript, a sweatshirt and black pants.  There was nothing distinguishing in the description of the person or his clothing.  The most potentially distinctive information provided was that the subject appeared to have mental health problems, did not understand what people were saying, and had "set up camp."  There was no indication in the record defendant displayed any behavior suggesting a mental health problem or lack of understanding when the officers approached and spoke with him.  Nor was there any indication he had "set up camp." Such a vague description does not provide reasonable grounds to stop every person falling within that vague description.  (*In re Tony C.*, *supra*, 21 Cal.3d at p. 898; *In re Carlos M.*, *supra*, 220 Cal.App.3d at pp. 381-382.)

10

A general description combined with a close temporal and geographical connection between the crime and the suspects, may justify a detention. (*People v. Conway* (1994) 25 Cal.App.4th 385, 390 [detention lawful where stop occurred within two minutes of receiving report of a burglary]; *People v. Lazanis* (1989) 209 Cal.App.3d 49, 54 [detention lawful stop occurred within moments of burglary report]; *People v. McCluskey* (1981) 125 Cal.App.3d 220, 223 [lawful detention description included height, race, facial hair, approximate age and general clothing, stop conducted within five minutes of report of robbery].) Here, although there was geographic proximity to the business, the officers were at the scene two and one-half hours after the call was made. In addition, this was not a secluded or remote area. It was a business area, with significant foot traffic, in the middle of the day. Two and one-half hours in a busy area is a significant lapse of time, and that lapse of time combined with the general physical description did not provide reasonable suspicion.

In addition, in the authorities cited above, an actual crime was reported -- the threshold requirement in a *Terry* stop. Those reports of crimes gave rise to an indication that "some activity relating to crime has taken place or is occurring or about to occur." Mere presence in a high-crime area cannot supply the necessary reasonable suspicion. (*In re Tony C.*, *supra*, 21 Cal.3d at p. 893.) Here, the complaint was of otherwise undescribed "harassing" conduct. There was no information indicting threats, trespassing, battery, physical assault, or weapons. There was no information the person had been asked and refused to leave the business. This was not a description of criminal conduct, and at the hearing, the People made no assertion that this "harassment" was criminal, nor did they suggest what criminal offense this conduct might have constituted.[6]

---

[6] At the trial court, the People did not offer any suggestion as to what criminal activity was occurring or about to occur that would have justified the detention. On appeal, the People contend law enforcement officers received a complaint someone was violating section 602.1, subdivision (a) ("Any person who intentionally interferes with

11

Nothing about defendant's conduct, sitting on the sidewalk, wearing a jacket, sweatshirt, and pants suggested he was engaged in or about to engage in criminal activity.

A person approached by police for questioning "need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citations.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." (*Florida v. Royer* (1983) 460 U.S. 491, 498 [75 L.Ed.2d 229, 236]; see also *Illinois v. Wardlow* (2000) 528 U.S. 119, 125 [145 L.Ed.2d 570, 577].) Thus, the fact that defendant refused to provide his identification and tried to walk away from the officers did not provide them with reasonable suspicion sufficient to justify his detention.

"[A] frisk for weapons is not justified unless the officer can point to specific and articulable facts which, considered in conjunction with rational inferences to be drawn therefrom, give rise to a reasonable suspicion that the suspect is armed and dangerous." (*People v. Medina* (2003) 110 Cal.App.4th 171, 176-177.) A claim of "harassing" customers of a business, with no reports of violence, battery, assault, threats or weapons does not reasonably suggest the presence of weapons. Nor did defendant's conduct, or wearing a jacket and sweatshirt on a "pretty warm" day provide reasonable grounds to believe he was armed and/or dangerous and might gain immediate control of a weapon. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 927.) Thus, there was not reasonable suspicion to patsearch defendant once he was detained.

In this case the officers did not have sufficient information that a crime had been committed or was about to be committed and defendant was the person who had

---

any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment.") No reference was made to that Penal Code section in the call, and there was no indication in the call that person had refused to leave the premises or that he was obstructing or intimidating customers.

committed that crime. There was no reasonable suspicion for them to detain defendant or patsearch him. The motion to suppress should have been granted. Because the motion to suppress was erroneously denied, the judgment must be reversed.

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with instructions to vacate its order denying the motion to suppress, enter a new order granting the motion to suppress and conduct further proceedings in accordance with the law.

/s/ _____
Robie, J.

We concur:

/s/ _____
Blease, Acting P. J.

/s/ _____
Renner, J.

13

Filed 12/10/18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL JASON THOMAS,<br><br>        Defendant and Appellant. | C083845<br><br>(Super. Ct. No. 16FE007658)<br><br>ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION |

THE COURT:

The opinion of this court filed December 3, 2018, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:


 /s/
Blease, Acting P. J.


 /s/
Robie, J.


 /s/
Renner, J.


1

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, Steve White, Judge.  Reversed.

Richard M. Oberto, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.