Filed 7/24/24  P. v. Tipton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY RAY TIPTON,<br><br>Defendant and Appellant. | C099218<br><br>(Super. Ct. No. 62187257) |

After denial of his motion to suppress, defendant Timothy Ray Tipton, in exchange for an eight-year prison sentence, pleaded no contest to transportation of methamphetamine for sale, transportation of heroin, two counts of unlawful possession of a firearm by a felon, and unlawful possession of ammunition.  On appeal, defendant contends the trial court erred in denying his motion to suppress.  We affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2022, defendant was charged in a complaint with transportation of methamphetamine for sale (Health & Saf. Code,[1] § 11379, subd. (a); count one), possession of methamphetamine for sale (§ 11378; count two), transportation of heroin (§ 11352, subd. (a); count three), possession of heroin for sale (§ 11351; count four), possession and sale of ketamine (§ 11379.2; count five), possession of methamphetamine while armed with a firearm (§ 11370.1, subd. (a); count six), three counts of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); counts seven, eight, and nine), and unlawful possession of ammunition (Pen. Code, § 30305, subd. (a)(1), count ten). The complaint alleged numerous circumstances in aggravation under California Rules of Court, rule 4.421.

On October 7, 2022, defendant filed a motion to suppress under Penal Code section 1538.5. On the same day, Officer Bryan Gore testified at a combined preliminary hearing and hearing on defendant's motion to suppress.

On September 1, 2022, Gore was working as a police officer for the City of Rocklin. About 11:00 p.m., Gore observed a man and a woman walking toward a Ford Mustang in the parking lot of a hotel. Gore did not see them carrying anything. The woman got in the driver's side, and the man got in the passenger side. Gore conducted a license plate check of the Mustang and found that it was registered to Megan Dilg, who was on probation. When the Mustang got to the front of the hotel, Gore waved, and the driver stopped. Gore did not shine a white light or activate his overhead lights.

Gore approached the driver. Defendant was in the passenger seat. Gore explained that the registered owner of the vehicle was on probation and asked the driver if she was the owner, Megan Dilg. The driver said she had purchased the car from a female. At

---

[1]     Undesignated statutory references are to the Health and Safety Code.

Gore's request, the driver identified herself as Brittney Hall; defendant also identified himself. Gore confirmed with dispatch that Hall was on probation and subject to search.

Gore asked Hall to step out of the vehicle and sit on the curb. Additional officers arrived to provide backup. Gore conducted a records check for defendant and determined he had a prior firearms possession offense, but was not on probation or parole. Gore asked defendant to step out of the vehicle. The prior weapons charge raised an officer safety concern for Gore, so he explained to defendant that he would be conducting a patdown search for weapons. In the search, Gore found a pocketknife and put it on the rear floorboard of the car.

Defendant sat on the curb so Gore could conduct a probation search of the car. In that search, Gore found a purse in the middle of the rear seat. Inside the purse Gore found a glass smoking pipe with a burnt, off-white residue. Gore recognized the pipe as a device used to ingest narcotics. Based on the residue, Gore concluded the pipe had been used. After waiving her rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), Hall confirmed the purse was hers.

Gore also found a black suitcase on the rear seat behind the driver. The suitcase was within arm's reach of the driver. The name "Pelly" was written with a marker on the base of the handle. The suitcase was locked with a small brass lock. Because the driver, Hall was on searchable probation and the suitcase was next to a purse containing drug paraphernalia, Gore decided to search the suitcase. Gore found a number of keys in Hall's purse and tried some of them on the lock, but they did not fit. Defendant initially stated that he did not have the keys. A short time later, defendant changed his statement and said he did have the keys. Defendant, however, did not furnish the keys. Rather, defendant stated that he was not on probation or parole, Hall did not have access to the suitcase, and he did not consent to Gore searching it. Gore said that he did not know if Hall had access to the suitcase or not. The lock was cut, and Gore opened the suitcase.

The suitcase contained a nine-millimeter semiautomatic Keltec rifle with a folding stock, a digital scale with what appeared to be drug residue on its surface, and 10 vials of what Gore recognized to be steroids. Gore also found seven other vials, one with white crystalline powder and six containing a powder with the same consistency but tinted amber, as well as three smaller vials of an amber crystalline substance, a baggie of an off-white crystalline substance, a rubber container with brown tar-like substance with a vinegar odor, a small baggie with a white powder substance, a small baggie with a purple crystalline substance, and a baggie with some clear or translucent-colored cubes. Also inside the suitcase were various drug paraphernalia items with drug residue on the surface. The vial with white powder was later determined to contain ketamine and the amber-tinted powder was a mix of MDMA and ketamine. The off-white substance in a baggie was methamphetamine and the white powder was cocaine. The baggie with the brown tar-like substance contained heroin.

The suitcase also contained two small safes. Another officer searched defendant again after the suitcase was opened. In addition to $621, the officer found keys to open the safes. One safe contained two handguns: a nine-millimeter Ruger semiautomatic and a Polymer80, a "ghost gun" without a serial number. Gore also found a Glock switch that converts a semiautomatic firearm to fully automatic and several extended Glock magazines containing 139 rounds of ammunition.

Hall testified for the defense. Hall said that she had borrowed the Mustang. Hall picked up defendant from the hotel to go get something to eat. Hall walked to the hotel and met defendant at the entrance. Defendant was carrying a small luggage bag when he came out. They walked to Hall's car. Hall noticed a police car entering the parking lot as they were walking to the Mustang. Defendant put the bag in the back seat. When Hall left the parking lot, she drove in the correct direction in a roundabout in front of the hotel and the police car pulled into the roundabout in the wrong direction. The police car shined a light on her car. Hall stopped because the officer was signaling to get her

4

attention, shining a light, and "basically" blocking her path. When the officer got out of the patrol car and was standing outside her car, Hall rolled down her window. The officer asked Hall if her first name was Megan, and she said she was not Megan. Hall showed her ID card, and the officer radioed to check her name. The officer asked Hall if she was on probation or parole. Before she answered, the officer heard on his radio that Hall was on probation. At the officer's request, Hall got out of the car and sat on the curb. Officers then searched her purse and the trunk of the car. Defendant was sitting on the curb next to Hall.

In rebuttal, Gore testified that he did not shine a spotlight or block Hall's car. Gore testified that there was room in the roundabout that served as the entrance to the hotel for two cars going either way.

The trial court heard oral argument by counsel for the parties and took the matter under submission. On October 13, 2022, the trial court denied defendant's motion to suppress. The court explained Hall's purse contained illegal drug paraphernalia, to wit, a methamphetamine pipe. Because the driver was on probation and subject to search and her purse contained a pipe associated with drug use, the officer had probable cause to look into closed containers in the car. Although officers tried the driver's keys to open the suitcase, and they did not work, it was not clear at that moment who owned the suitcase. Defendant initially stated he did not have the key, but later defendant said he did have the key and did not consent to officers opening the suitcase. It was lawful for officers to search for contraband in a locked container, because "[i]t was a little bit ambiguous as to ownership of the container, but it was in the vehicle after a meth pipe was found."

On October 18, 2022, the People filed an information alleging the same charges as the complaint in counts one through five and alleging possession of a firearm by a felon in counts six, seven, and eight and unlawful possession of ammunition in count nine.

5

On April 4, 2023, defendant filed a motion to dismiss, in which he renewed his motion to suppress. The People filed an opposition. The trial court denied the motion.

On August 1, 2023, defendant entered into a plea agreement with the People. In exchange for a stipulated eight-year prison term, defendant pleaded no contest to counts one, three, six, seven, and nine of the information. The People dismissed the remaining counts. Defendant admitted the aggravating factor that his prior performance on probation had been unsatisfactory. (California Rules of Court, rule 4.421(b)(5).) In a separate case, defendant was sentenced to three years eight months in state prison. The aggregate sentence for both cases was 11 years eight months.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant contends a warrantless search of defendant's locked suitcase cannot be justified by Hall's searchable probation condition and the discovery of a pipe in her purse. Consequently, defendant maintains the trial court erred in denying his suppression motion.

"Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916 (*Schmitz*).) "A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." (*Ibid.*) " 'A probation search is one of those exceptions.' " (*People v. Thomas* (2018) 29 Cal.App.5th 1107, 1114, quoting *People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)

On appeal from a denial of a motion to suppress, we defer to the trial court's express or implied factual findings if supported by substantial evidence, but we independently apply constitutional principles to the trial court's factual findings in determining whether the search was reasonable under the Fourth Amendment. (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

6

In executing a probation search, an officer conducting the search may look into closed containers that the officer reasonably believes are in the complete or joint control of the probationer. (*People v. Woods* (1999) 21 Cal.4th 668, 682; *Schmitz*, *supra*, 55 Cal.4th at p. 913; see also *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159; *People v. Boyd* (1990) 224 Cal.App.3d 736, 749.) Only areas under the sole control of a nonprobationer are outside the scope of the search. (*Woods*, at p. 682.) Those who associate with parolees or probationers do not abdicate all expectations of privacy in all personal property. (See *People v. Robles* (2000) 23 Cal.4th 789, 798; *Woods*, at p. 682; *Baker*, at p. 1159.) But the key question is whether there is joint ownership, control, or possession with the probationer or parolee over the searched item. (See *Baker*, at p. 1159.)

In *Schmitz*, the California Supreme Court applied these principles to a vehicle search of a parolee. The court held that a vehicle search based on a passenger's parole status can extend to those areas of the vehicle where a parolee reasonably could have stowed personal items or discarded items when aware of law enforcement activity. (*Schmitz*, *supra*, 55 Cal.4th at p. 926.) The court observed that "a standard five-passenger automobile generally affords ready access to areas in both the front and back seats." (*Id.* at p. 925.)

In *People v. Cervantes* (2017) 11 Cal.App.5th 860 , the court extended *Schmitz* to a probation search of a vehicle. (*Cervantes*, at pp. 866-867, 870-871.) Under the principles stated in *Schmitz*, the court in *Cervantes* held that a vehicle search based on an occupant's probation status may extend beyond the probationer's seat but is confined to areas of the passenger compartment where the officer reasonably expects a probationer could have stowed personal belongings or discarded them when aware of police activity. (*Id.* at p. 871.) The area subject to search includes " 'items of personal property if the officer reasonably believes that the [probationer] owns the items or has the ability to exert control over them.' " (*Ibid.*) In this context," ' "control" ' " means " 'physical access,' "

7

not " 'ownership, possession, or authority over the property searched.' " (*Schmitz*, *supra*, 55 Cal.4th at p. 928.) The officer's "reasonable belief" is judged by an objective standard: " ' "would the facts available to the officer at the moment . . . 'warrant a [person] of reasonable caution in the [requisite] belief.' " ' " (*Id.* at p. 930, fn. 23.) In determining the reasonableness of the officer's actions, we consider the totality of the circumstances. (See *Cervantes*, at p. 871.) In other words, we consider whether in the totality of the circumstances an officer could reasonably conclude the probationer had access to the property searched. (See *Schmitz*, at p. 930, fn. 22.)

Defendant contends that the officer had no reasonable basis to conclude that Hall's probation status and the pipe found in her purse justified a search of defendant's locked suitcase, because the officer knew the suitcase belonged to defendant, and he did not consent to the search. Defendant's description of the facts is at odds with the evidence presented to the magistrate. Initially, defendant did not say the suitcase belonged to him or that the keys in Hall's possession would not fit as the police tried to open the lock with her keys. Rather, defendant stated that he did not have the keys to the suitcase, suggesting it was not his suitcase. Further, the suitcase did not have any indicia that it belonged to defendant. The name "Pelly" was written on the suitcase, not defendant' s name. Only later did defendant change his statement and declare that he had the keys, he was not on probation or parole, Hall did not have access to the suitcase, and he did not consent to the search. Although defendant claimed he had the keys to the suitcase lock, he did not furnish them, and officers were forced to cut the lock.

It was reasonable for Gore to believe that Hall had access to the suitcase in the back seat. Given defendant's changing statements about the suitcase, it was not evident that defendant had sole access to the suitcase. Gore had no reason to credit defendant's statement that it was his suitcase alone, as defendant did not make this statement until Gore was in the process of opening the suitcase. In sum, the suitcase was in the back seat of a car behind the driver, Hall, who was on searchable probation, along with her purse

8

that contained drug paraphernalia. Nothing about the suitcase indicated that defendant had sole access to it, not the least because defendant initially stated that he did not have the keys to the lock on the suitcase. Considering the totality of the circumstances, we conclude it was objectively reasonable for Gore to search the suitcase for contraband. (*People v. Cervantes*, *supra*, 11 Cal.App.5th at p. 871.)

Consequently, we conclude the warrantless search of the vehicle, including Hall's purse and the suitcase in the back seat, was justified by Hall's probation condition and was not a violation of the Fourth Amendment. (*People v. Cervantes*, *supra*, 11 Cal.App.5th at p. 871.) The trial court did not err in denying defendant's suppression motion.

## DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　Wiseman J.[*]



We concur:


/s/_____
Robie, Acting P. J.


/s/_____
Duarte, J.

_____

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.